**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In re:** ) | |
| ) | **Chapter 11** |
| **THE McBURNEY CORPORATION,** ) | |
| ) | **Case No. 11-70684** |
| **Debtor.** ) | |
| ) | |

**EMERGENCY MOTION OF DEBTOR FOR AUTHORITY**
**TO USE POTENTIAL CASH COLLATERAL**

The McBurney Corporation (the "Debtor"), as debtor and debtor in possession, by this motion (the "Motion") seeks entry of an order, pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and in accordance with Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtor's use of certain potential cash collateral on an emergency interim basis, effective as of the Petition Date (as defined below) through the time of the final hearing on the Motion; (ii) granting the Debtor authority to provide adequate protection; and (iii) setting a final hearing on the use of potential cash collateral. In support of this Motion, the Debtor relies on the *Declaration of Franklin Blakeslee McBurney in Support of Chapter 11 Petition and First Day Motions* (the "McBurney Declaration"), which has been filed with the Court. In further support of this Motion, the Debtor states and shows as follows:

**Parties, Jurisdiction and Venue**

1.     On July 15, 2011 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this Chapter 11 case, and no committee has been appointed or designated.

2. A description of the Debtor's business, the reasons for filing this Chapter 11 case and the relief sought from this Court to allow for a smooth transition into operations under Chapter 11 are set forth in the McBurney Declaration.

3. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this core proceeding pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5. The Debtor provides comprehensive engineering, construction, and maintenance services in all facets of steam and power plant projects. The company was originally founded in 1911 as a manufacturer of coal stoker equipment and evolved through the years to specialize in sophisticated biomass combustion technologies. The company currently offers construction, maintenance, and repair services for steam and power plant projects, as well as field services such as plant life extension evaluation, training, emergency response, and inspections.

6. The Debtor has three wholly-owned subsidiaries, McBurney Corporation of California ("McBurney California"), McBurney Power Limited ("MPL"), and SC McBurney BioEnergy SRL ("MBE"). McBurney California provides field services and repair services through employees and provides payroll services to the Debtor. MPL provides field services, contracting services, and execution of projects in Canada. MBE provides field services, contracting services, and execution of projects in Romania and Europe.

7. Prior to the Petition Date, the Debtor served as a subcontractor for MPL on a project for AbitibiBowater Inc. ("Abitibi") in Canada. Due to financial difficulties in the market, Abitibi defaulted on its contract payments to MPL, resulting in non-payment to the Debtor. Abitibi then commenced insolvency proceedings in Canada.

8.  During the same period of time, the Debtor was engaged in a contract dispute with a European company, Tate & Lyle Industries, PLC ("<u>Tate & Lyle</u>").  The Debtor has alleged over $5 million in damages relating to the dispute with Tate & Lyle over two projects.

9.  The payment defaults by Atibiti and Tate & Lyle caused extreme financial hardship to the Debtor.  The Debtor was ultimately forced to divert substantial cash from its business operations as it incurred legal expenses both to defend claims and pursue the recovery of funds owing by Atibiti and Tate & Lyle.  As a result, the Debtor was unable to pay many of its suppliers and creditors and was forced to curtail its business operations.  Some of those suppliers and creditors sued the Debtor to recover the monies owed by the Debtor.  The Debtor resolved many of the lawsuits by consent.  However, the Debtor has not been able to satisfy the monthly payment obligations under the consent judgments.

10. With the slow pace of the economic recovery, the Debtor has not been able to recover financially and its business continues to suffer.  The Debtor believes this bankruptcy filing is necessary to help it reorganize its affairs.

## **Pre-Petition Judgments**

11. Prior to the Petition Date, the Debtor was a named defendant in various litigation filed in state courts.

12. With respect to these pending state cases, judgments were entered against the Debtor (collectively, the "<u>Judgments</u>") and in favor of McNaughton-McKay Southeast Inc., Patton's Inc., and Twin City Clarage, Inc. (collectively, the "<u>Pre-Petition Judgment Creditors</u>") as follows:

| Judgment Creditor | Action | Date of Judgment | Judgment Balance |
|---|---|---|---|
| McNaughton-McKay Southeast Inc. | State Court, Gwinnett County, Ga. | 10/15/2010 | $55,109.82 |
| Patton's Inc. | State Court, Gwinnett County, Ga. | 2/4/2011 | $ 8,000.00 |
| Twin City Clarage, Inc. | State Court, Gwinnett County, Ga. | 5/9/2011 | $27,500.00 |

13. As of the Petition Date, the aggregate balances of the judgments entered in favor of the Pre-Petition Judgment Creditors totaled approximately $90,609.82.

14. Under Georgia law, upon the entry of a judgment by a Georgia court, whether originally or by domestication, a lien in favor of the judgment holder attaches to certain tangible personal property of the defendant located in the state of Georgia, including inventory. O.C.G.A. § 9-12-80; e.g., General Lithographing Co. v. Sight & Sound Projectors, Inc., 128 Ga. App. 304, 196 S.E.2d 479 (1973); McWilliams v. Hemingway, 80 Ga. App. 843, 57 S.E.2d 623 (1950).

15. Under Georgia law, however, the judgment lien does not attach to any choses in action of the defendant, including, without limitation, any accounts receivable, deposit accounts, cash and contract rights. E.g., Prodigy Centers/Atlanta No. 1 L.P. v. T-C Associates, Ltd., 147 F.3d 1324 (11th Cir. 1998); Prodigy Centers/Atlanta v. T-C Associates, 269 Ga. 522, 501 S.E.2d 209 (1998).

16. In addition, if the judgment was entered within 90 days prior to the date on which the bankruptcy case is commenced, any lien attaching to the debtor's property as a result of the judgment may be avoidable as a preference under Section 547 of the Bankruptcy Code. 11 U.S.C. § 547; Pettigrew v. Hoey Construction Co., 2007 Bankr. LEXIS 979 (Bankr. N.D. Ga. Feb. 15, 2007)

17. The judgment in favor of Twin City Clarage, Inc. was entered on May 9, 2011, within 90 days prior to the Petition Date, and the Debtor intends to file promptly an adversary

proceeding against Twin City Clarage, Inc. to, among other forms of relief, avoid its judgment lien as a preference.

18. As of the Petition Date, the Debtor had approximately $100,000 in value (at cost) of parts and related tools and inventory in its warehouse in Norcross, Georgia (collectively, the "Pre-Petition Inventory"). At liquidation, the value of the Pre-Petition Inventory would be substantially less than $100,000. Without conceding the validity, enforceability or priority of any of the Judgments, it is possible that liens on account of one or more of the Judgments have attached to the Pre-Petition Inventory.

19. Any judgment lien in favor of a Pre-Petition Judgment Creditor did not attach to any choses in action of the Debtor in existence of as of the date such judgment was entered, including accounts receivable, deposit accounts, cash and contract rights.

20. To the extent that any of the Judgments are valid and unavoidable and that such Judgments as of the Petition Date attached to any of the Pre-Petition Inventory, such Pre-Petition Judgment Creditors may be entitled to adequate protection of their lien interests in the Pre-Petition Inventory in connection with the Debtor's use of proceeds of the Pre-Petition Inventory during this Chapter 11 case.

## **Relief Requested**

21. Through this Motion, out of an abundance of caution and solely as a protective measure, the Debtor seeks interim authorization to use proceeds of the Pre-Petition Inventory (the "Potential Cash Collateral") for the purpose of avoiding immediate and irreparable harm to its bankruptcy estate pending a final hearing and on a final basis after a final hearing on this Motion. In consideration for use of Potential Cash Collateral, the Debtor seeks authority from the Court to grant the Pre-Petition Judgment Creditors adequate protection, to the extent that any of the Judgments are

valid and unavoidable and that such Judgments as of the Petition Date attached to any of the Pre-Petition Inventory. Further, the Debtor requests that the Court schedule a final hearing on the use of Potential Cash Collateral and, following such a hearing, enter a final order authorizing the Debtor to continue to use the Potential Cash Collateral.

22. The Debtor proposes to use Potential Cash Collateral immediately following the Court's entry of an interim order authorizing such use for general and administrative expenses related to the Debtor's operation of its business in the ordinary course. The Debtor's proposed use of Potential Cash Collateral pending a final hearing is for the purposes and amounts set forth in a budget, attached hereto as Exhibit B (as at any time amended or supplemented, the "Budget"), and will be subject to the terms and conditions detailed in the proposed interim order, attached hereto as Exhibit A (the "Proposed Interim Order").

23. Bankruptcy Code Section 363(c)(2) provides that a debtor-in-possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the court approves the use, conditioned on the provision of adequate protection. 11 U.S.C. § 363(c)(2). Section 363(p) further provides that at a hearing on the use of cash collateral, the party asserting an interest in such cash collateral has the burden of proof on the issues of the validity, priority, or extent of such interest, and the debtor-in-possession has the burden of proof as to the issue of adequate protection. 11 U.S.C. § 363(p). Bankruptcy Rule 4001(b)(2) provides that a court may not hold a final hearing on a motion to use cash collateral earlier than fifteen (15) days after service of such motion, but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the debtor's estate pending a final hearing. FED. R. BANKR. P. 4001(b)(2).

24. In consideration of the Debtor's use of Potential Cash Collateral, the Pre-Petition Judgment Creditors may be entitled to adequate protection of their interests in the Pre-Petition Inventory within the meaning of Sections 361 and 363 of the Bankruptcy Code, to the extent that such Judgments are valid and unavoidable and as of the Petition Date attached to the Pre-Petition Inventory.

25. In consideration for the Debtor's use of the Potential Cash Collateral, solely as a protective measure, the Debtor proposes to grant such Pre-Petition Judgment Creditors adequate protection in the form of replacement liens upon all parts, tools and inventory acquired by the Debtor after the Petition Date and located in the State of Georgia (collectively, the "Post-Petition Inventory").

26. The liens granted to such Pre-Petition Judgment Creditors in connection with the Debtor's use of Potential Cash Collateral shall be valid and perfected without the need for the execution or filing of any further documents or instruments.

## Basis for Relief Requested

**A.  The Court Should Approve the Motion Because the Pre-Petition Judgment Creditors Will Be Adequately Protected**

27. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) (citing In re O'Connor, 808 F.2d 1393, 1396-97 (10th Cir. 1987)); In re Martin, 761 F.2d 472, 476 (8th Cir. 1985).

28.    Adequate protection is meant to ensure that secured creditors receive the value for which they originally bargained.  Swedeland, 16 F.3d at 564 (citing O'Connor, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy").  Courts have also noted that the "essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing. . . and the confirmation." In re Arriens, 25 B.R. 79, 81 (Bankr. D.Or. 1982).  The purpose of the adequate protection requirement is to protect secured creditors from diminution in value during the period of use.  See In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); In re Becker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); In re Ledgmere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

29.    In this case, the Debtor's request for use of Potential Cash Collateral and the protections proposed under this Motion and described in greater detail in the Proposed Interim Order, under the circumstances, are reasonable, appropriate and sufficient to satisfy the standard of "adequate protection" and maintain the value of any interests the Pre-Petition Judgment Creditors have in the Pre-Petition Inventory.

**B.    The Use of Potential Cash Collateral Will Preserve the Value of the Debtor's Assets**

30.    If the Debtor is not authorized to use Potential Cash Collateral, its business will suffer irreparable harm.  The use of Potential Cash Collateral, therefore, is critical to the Debtor's ability to operate its business going forward and to maximize the value of its assets for the benefit of its creditors.  Furthermore, the Debtor has inventory and other valuable personal property at another location in the United States, as well as outstanding account receivables that need collection.  The Debtor requires the use of Potential Cash Collateral in order to protect and preserve the value of such inventory and personal property, and to facilitate the collection of account receivables.

31. It is well established that a bankruptcy court, if possible, should resolve issues in favor of preserving a debtor's business as a going concern.  See, e.g., In re George Ruggiere Chrysler-Plymouth , Inc., 727 F.2d 1017, 1019 (11th Cir. 1984) ("A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild.  Without the availability of cash…the congressional policy favoring rehabilitation over economic failure would be frustrated.").

32. As discussed above, the Debtor proposes to use Potential Cash Collateral, in the ordinary course of its business, on an interim basis pending a final hearing.  If the Debtor cannot use Potential Cash Collateral during the interim period, the Debtor will suffer irreparable harm to its business and the value of the Debtor's assets.  The Debtor's use of Potential Cash Collateral will allow the Debtor to maintain operations and preserve the value of its business.

33. The Debtor submits that interim use of the Potential Cash Collateral pending a final hearing in order to avoid irreparable harm pursuant to the terms and conditions set forth herein, and on a final basis following a final hearing on the use of Potential Cash Collateral, is fair and reasonable.  Furthermore, the protections proposed to be afforded to the Pre-Petition Judgment Creditors in this Motion adequately protect any interest the Pre-Petition Judgment Creditors may have in the Pre-Petition Inventory.  For all the reasons stated above, the Debtor submits that approval of the Motion is proper.

34. Time is of the essence and, due to the emergency need for the use of Potential Cash Collateral, it is essential that notice be given and a hearing be held immediately on the Motion.  The Debtor requests that a hearing be scheduled on an expedited basis, for the purpose of conducting a preliminary hearing to consider the Debtor's use of Potential Cash Collateral pending a final hearing on the Motion.  Further, the Debtor requests that a final hearing be scheduled on this Motion.

### Notice and Prior Motions

35.     No trustee, examiner, or statutory creditors' committee has been appointed in this Chapter 11 case. The Debtor will serve notice of this Motion on: (i) all secured creditors; (ii) the Office of the United States Trustee for the District of Georgia; and (iii) those creditors holding the 20 largest unsecured claims against the Debtor's estate.  The Debtor submits that no other or further notice need be provided.  No previous request for the relief requested herein has been made to this Court.

### Reservation of Rights

36.     This Motion is filed in an abundance of caution and does not constitute any agreement, admission or stipulation by the Debtor with respect to any of the Judgments, any liens that may have resulted from any of the Judgments, or any claim in favor of any Pre-Petition Judgment Creditor.  The Debtor believes that this Motion may not be necessary and that the Debtor may be authorized to use proceeds of the Pre-Petition Inventory without order of the Court.  However, due to the consequences of having been found to have used cash collateral without proper authorization, the Debtor has elected to bring the issues described in this Motion to the attention of the Court and to seek to provide adequate protection as a precautionary measure.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order substantially in the form annexed hereto as <u>Exhibit A</u>, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted, this 17th day of July, 2011.

**PARKER, HUDSON, RAINER & DOBBS LLP**

By: */s/ James S. Rankin, Jr.*
    C. Edward Dobbs
    Georgia Bar No. 223450
    James S. Rankin, Jr.
    Georgia Bar No. 594620
    Tyronia M. Smith
    Georgia Bar No. 141320

1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
Telephone:  (404) 523-5300
Facsimile:  (404) 522-8409
edobbs@phrd.com
jrankin@phrd.com
tmsmith@phrd.com

Proposed Attorneys for the Debtor and
Debtor-in-Possession

## Exhibit A

## Proposed Order

1989160_2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **THE McBURNEY CORPORATION,** ) | |
| ) | Case No. _____ |
| Debtor. ) | |
| ) | |

**INTERIM ORDER (I) AUTHORIZING THE USE OF
POTENTIAL CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO CERTAIN
PRE-PETITION JUDGMENT CREDITORS, (III) GRANTING
RELATED RELIEF, AND (IV) SCHEDULING A FINAL HEARING**

THIS MATTER is before the Court for hearing on July ___, 2011 (the "Interim Hearing") on the motion (Document No. ___) (the "Motion") of The McBurney Corporation (the "Debtor") in this Chapter 11 case pursuant to Sections 105, 361, and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001 and 9014, seeking, among other things, authority to use proceeds of Pre-Petition Inventory[1] that may be subject to liens in favor of certain creditors holding pre-petition judgments against the Debtor.

Due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing having been served by the Debtor, and upon the record made by the Debtor at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED, as follows:

---

[1] Capitalized terms used in this Order, to the extent not otherwise defined, shall have the meanings ascribed to such terms in the Motion.

1989691_3

1.	<u>Jurisdiction and Venue</u>.  This Chapter 11 case was commenced on July 15, 2011 (the "<u>Petition Date</u>").  This Court has subject-matter jurisdiction over the case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.	<u>Notice</u>.  Under the circumstances, the notice given by the Debtor of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001 and Local Bankruptcy Court Rule 9007-2.

3.	<u>No Committee</u>.  As of the date hereof, no official committee of creditors holding unsecured claims (a "<u>Committee</u>") has been appointed pursuant to Section 1102 of the Bankruptcy Code in this Chapter 11 case.

4.	<u>Pre-Petition Judgments</u>.  Prior to the Petition Date, judgments (collectively, the "<u>Pre-Petition Judgments</u>") may have been entered against the Debtor and in favor of McNaughton-McKay Southeast Inc., Patton's, Inc., and Twin City Clarage, Inc. (collectively, the "<u>Pre-Petition Judgment Creditors</u>").

5.	<u>Findings Regarding the Use of Potential Cash Collateral</u>.

(a)	The Debtor has an immediate need to use Potential Cash Collateral to permit, among other things, the orderly continuation of the operation of its business and to avoid irreparable harm.  The access of the Debtor to sufficient working capital and liquidity through the use of Potential Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtor and to a successful reorganization of the Debtor.  The expenditures provided for in the Budget (as defined below) by the Debtor are appropriate to avoid irreparable harm to the Debtor's estate.

(b)	Good cause has been shown for entry of this Order.  The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets, and to maximize a return for all creditors requires the use of Potential Cash Collateral.  In the absence of the use of Potential Cash Collateral, serious and irreparable harm to the Debtor, its estate, its creditors and its equity holders would occur.  Further, the possibility for a successful reorganization of the Debtor would be jeopardized.

6.	<u>Use of Cash Collateral</u>.  The Debtor is hereby authorized, subject to the terms and conditions of this Order, to use proceeds of Pre-Petition Inventory (the "<u>Potential Cash Collateral</u>"), for general corporate purposes and to pay costs and expenses related to this Chapter 11 case in accordance with the budget attached hereto as <u>Exhibit A</u> (as at any time amended or supplemented (with such amendment or supplement to be filed with the Court), the "<u>Budget</u>").  The Debtor may exceed any expense item in the Budget by an amount not greater than 15% of such item.

1989691_3

7. <u>Entitlement to Adequate Protection</u>. To the extent (if any) that its Pre-Petition Judgment is valid and not avoidable and such Pre-Petition Judgment created a lien (a "<u>Pre-Petition Judgment Lien</u>") that attached as of the Petition Date to the Pre-Petition Inventory, each Pre-Petition Judgment Creditor is entitled, pursuant to Sections 361, 362, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interests in the Pre-Petition Inventory on account of the Debtor's use of proceeds of the Pre-Petition Inventory and any other diminution in value arising out of the Debtor's use, sale, lease, or disposition of the Pre-Petition Inventory (each such diminution, a "<u>Diminution in Value</u>").

8. <u>Adequate Protection</u>. As adequate protection for any Diminution in Value, to the extent that its Pre-Petition Judgment is valid and not avoidable and that such Pre-Petition Judgment Lien attached as of the Petition Date to the Pre-Petition Inventory, such Pre-Petition Judgment Creditor is hereby granted a replacement lien (the "<u>Adequate Protection Liens</u>") in and upon all parts, tools and inventory acquired by the Debtor after the Petition Date and located in the State of Georgia (collectively, the "<u>Post-Petition Inventory</u>"). The Adequate Protection Liens shall be junior in priority to any valid, perfected and unavoidable security interests and liens in the Pre-Petition Inventory in existence on the Petition Date (collectively, the "<u>Existing Perfected Liens</u>"). This Order shall be deemed to grant and perfect, and be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens as of the Petition Date without the necessity of filing or recording any financing statement, deed of trust, mortgage or other instrument or document, which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens.

9. <u>Subsequent Hearing; Procedure for Objections and Entry of Final Order</u>. The Motion is set for a final hearing ("<u>Final Hearing</u>") before this Court at ____ _.m. on _____, _____, 2011, at which time any party in interest may present any timely filed objections to the entry of a final order on the Motion. The Debtor shall promptly serve a copy of this Order, by regular mail upon (i) the United States Trustee; (ii) all affected state and federal taxing authorities; (iii) the creditors holding the twenty largest unsecured claims against the Debtor, or any Committee; and (iv) any other party which theretofore has filed in the Case a request for special notice with this Court and served such request upon the Debtor's counsel. Any objections to the Motion, this Order and the entry of a final order on the Motion shall be in writing and shall be filed with the Court and served by _____, 2011, so that they are received on or before 4:00 p.m. (Eastern Time) of such date by (i) Parker, Hudson, Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, N.E., Atlanta, Georgia 30303, Attention: James S. Rankin, Jr., Esq., counsel for the Debtor; and (ii) the United States Trustee. Any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph 9.

10. <u>Reservation of Rights</u>. Neither the Motion nor this Order constitutes any agreement, admission or stipulation by the Debtor with respect to any of the Pre-Petition Judgments, any liens that may have resulted from any of the Pre-Petition Judgments, or any claim in favor of any Pre-Petition Judgment Creditor, and the Debtor has reserved all of its rights, remedies, claims and defenses with respect to each Pre-Petition Judgment and otherwise.

1989691_3

11. <u>Enforceability</u>. This Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon the entry hereof. The 10-day stay provisions of Bankruptcy Rule 6004(h), to the extent applicable, are hereby waived and shall not apply to this Order.

[END OF DOCUMENT]

<u>Prepared and presented by</u>:

**PARKER, HUDSON, RAINER & DOBBS LLP**

By: <u>/s/ James S. Rankin, Jr.</u>
James S. Rankin, Jr.
Georgia Bar No. 594620
Tyronia M. Smith
Georgia Bar No. 141320

1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
jrankin@phrd.com

Proposed Attorneys for the Debtor and
Debtor-in-Possession

<u>Distribution List</u>:

James S. Rankin, Jr., Esq., Parker Hudson Rainer & Dobbs LLP, 1500 Marquis Two Tower, 285 Peachtree Center Avenue, NE, Atlanta, Georgia 30303

United States Trustee, 362 Richard B. Russell Building, 75 Spring Street, Atlanta, GA 30303

# Exhibit A

**Budget**

1989691_3

# Exhibit A

**Budget**

1989691_3

**THE MCBURNEY CORPORATION**
**4 WEEK CASH FLOW**

|   |   |   | Week 1<br>18-Jul | Week 2<br>25-Jul | Week 3<br>1-Aug | Week 4<br>8-Aug |
|---|---|---|---|---|---|---|
| 1. | **FUNDS AT BEGINNING OF PERIOD** | | $211,981.28 | $786,662.69 | $660,350.22 | $734,792.77 |
| 2. | **RECEIPTS:** | | | | | |
|    | A. | Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
|    |    | Minus: Cash Refunds | 0.00 | 0.00 | 0.00 | 0.00 |
|    |    | Net Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
|    | B. | Accounts Receivable & Credit Sales | 615,566.41 | 74,508.40 | 190,837.80 | 82,000.00 |
|    | D. | Other Receipts (Attach List) | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. | **TOTAL RECEIPTS** | | 615,566.41 | 74,508.40 | 190,837.80 | 82,000.00 |
| 4. | **TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | | 827,547.69 | 861,171.09 | 851,188.02 | 816,792.77 |
| 5. | **DISBURSEMENTS** | | | | | |
|    | A. | Advertising | 0.00 | 0.00 | 0.00 | 0.00 |
|    | B. | Bank Charges | 0.00 | 750.00 | 0.00 | 0.00 |
|    | C. | Contract Labor | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
|    | D. | Fixed Asset Payments | 0.00 | 10,643.96 | 0.00 | 0.00 |
|    | E. | Insurance | 0.00 | 0.00 | 52,356.25 | 200.00 |
|    | F. | Inventory Payments | 22,185.00 | 47,652.00 | 41,589.00 | 38,421.00 |
|    | G. | Leases | 0.00 | 0.00 | 3,000.00 | 0.00 |
|    | H. | Manufacturing Supplies | 0.00 | 0.00 | 0.00 | 0.00 |
|    | I. | Office Supplies | 100.00 | 100.00 | 100.00 | 100.00 |
|    | J. | Payroll - Net | 7,000.00 | 82,000.00 | 7,000.00 | 82,000.00 |
|    | K. | Professional Fees (Acocunting & Legal) | 0.00 | 0.00 | 0.00 | 0.00 |
|    | L. | Rent | 0.00 | 20,774.91 | 750.00 | 0.00 |
|    | M. | Repairs & Maintenance | 0.00 | 0.00 | 0.00 | 0.00 |
|    | N. | Secured Creditor Payments | 0.00 | 0.00 | 0.00 | 0.00 |
|    | O. | Taxes Paid - Payroll | 1,400.00 | 28,700.00 | 1,400.00 | 28,700.00 |
|    | P. | Taxes Paid - Sales & Use | 0.00 | 0.00 | 0.00 | 0.00 |
|    | Q. | Taxes Paid - Other | 0.00 | 0.00 | 0.00 | 0.00 |
|    | R. | Telephone | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
|    | S. | Travel & Entertainment | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
|    | T. | U.S. Trustee Quarterly Fees | 0.00 | 0.00 | 0.00 | 0.00 |
|    | U. | Utilities | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
|    | V. | Vehicle Expenses | 0.00 | 0.00 | 0.00 | 0.00 |
|    | W. | Other Operating Expenses | 200.00 | 200.00 | 200.00 | 200.00 |
| 6. | **TOTAL DISBURSEMENTS (Sum of 5A thru W)** | | 40,885.00 | 200,820.87 | 116,395.25 | 159,621.00 |
| 7. | **ENDING BALANCE (Line 4 Minus Line 6)** | | $786,662.69 | $660,350.22 | $734,792.77 | $657,171.77 |

**Exhibit B**

**Budget**

1989160_2

**THE MCBURNEY CORPORATION**
**4 WEEK CASH FLOW**

|   |   |   | Week 1<br>18-Jul | Week 2<br>25-Jul | Week 3<br>1-Aug | Week 4<br>8-Aug |
|---|---|---|---|---|---|---|
| 1. | **FUNDS AT BEGINNING OF PERIOD** | | $211,981.28 | $786,662.69 | $660,350.22 | $734,792.77 |
| 2. | **RECEIPTS:** | | | | | |
|    | A. | Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
|    |    | Minus: Cash Refunds | 0.00 | 0.00 | 0.00 | 0.00 |
|    |    | Net Cash Sales | 0.00 | 0.00 | 0.00 | 0.00 |
|    | B. | Accounts Receivable & Credit Sales | 615,566.41 | 74,508.40 | 190,837.80 | 82,000.00 |
|    | D. | Other Receipts (Attach List) | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. | **TOTAL RECEIPTS** | | 615,566.41 | 74,508.40 | 190,837.80 | 82,000.00 |
| 4. | **TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | | 827,547.69 | 861,171.09 | 851,188.02 | 816,792.77 |
| 5. | **DISBURSEMENTS** | | | | | |
|    | A. | Advertising | 0.00 | 0.00 | 0.00 | 0.00 |
|    | B. | Bank Charges | 0.00 | 750.00 | 0.00 | 0.00 |
|    | C. | Contract Labor | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
|    | D. | Fixed Asset Payments | 0.00 | 10,643.96 | 0.00 | 0.00 |
|    | E. | Insurance | 0.00 | 0.00 | 52,356.25 | 200.00 |
|    | F. | Inventory Payments | 22,185.00 | 47,652.00 | 41,589.00 | 38,421.00 |
|    | G. | Leases | 0.00 | 0.00 | 3,000.00 | 0.00 |
|    | H. | Manufacturing Supplies | 0.00 | 0.00 | 0.00 | 0.00 |
|    | I. | Office Supplies | 100.00 | 100.00 | 100.00 | 100.00 |
|    | J. | Payroll - Net | 7,000.00 | 82,000.00 | 7,000.00 | 82,000.00 |
|    | K. | Professional Fees (Acocunting & Legal) | 0.00 | 0.00 | 0.00 | 0.00 |
|    | L. | Rent | 0.00 | 20,774.91 | 750.00 | 0.00 |
|    | M. | Repairs & Maintenance | 0.00 | 0.00 | 0.00 | 0.00 |
|    | N. | Secured Creditor Payments | 0.00 | 0.00 | 0.00 | 0.00 |
|    | O. | Taxes Paid - Payroll | 1,400.00 | 28,700.00 | 1,400.00 | 28,700.00 |
|    | P. | Taxes Paid - Sales & Use | 0.00 | 0.00 | 0.00 | 0.00 |
|    | Q. | Taxes Paid - Other | 0.00 | 0.00 | 0.00 | 0.00 |
|    | R. | Telephone | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
|    | S. | Travel & Entertainment | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
|    | T. | U.S. Trustee Quarterly Fees | 0.00 | 0.00 | 0.00 | 0.00 |
|    | U. | Utilities | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
|    | V. | Vehicle Expenses | 0.00 | 0.00 | 0.00 | 0.00 |
|    | W. | Other Operating Expenses | 200.00 | 200.00 | 200.00 | 200.00 |
| 6. | **TOTAL DISBURSEMENTS (Sum of 5A thru W)** | | 40,885.00 | 200,820.87 | 116,395.25 | 159,621.00 |
| 7. | **ENDING BALANCE (Line 4 Minus Line 6)** | | $786,662.69 | $660,350.22 | $734,792.77 | $657,171.77 |